1  Marisa Díaz, CSB No. 293072
   E-mail: mdiaz@legalaidatwork.org
2  Christopher Ho, CSB No. 129845
   E-mail: cho@legalaidatwork.org
3  LEGAL AID AT WORK
4  180 Montgomery Street, Suite 600
   San Francisco, California 94104
5  Telephone: 415.864.8848
6  Facsimile: 415.593.0096

7  Beth W. Mora, CSB No. 208859
   E-mail: bmora@moraelaw.com
8  MORA EMPLOYMENT LAW, APC
9  18 Crow Canyon Court, Suite 205
   San Ramon, California 94583
10 Telephone: 925.820.8949
11 Facsimile: 925.820.0278

12 Attorneys for Plaintiff-Intervenor Ayesha Faiz

13
14          IN THE UNITED STATES DISTRICT COURT
15       FOR THE NORTHERN DISTRICT OF CALIFORNIA
16
17 U.S. EQUAL EMPLOYMENT                    Case No. 19-cv-01231-JSW
18 OPPORTUNITY COMMISSION,

19          Plaintiff,                       **COMPLAINT IN INTERVENTION FOR
20                                           VIOLATIONS OF:**
21 AYESHA FAIZ,                                  (1) TITLE VII OF THE CIVIL RIGHTS ACT
                                                     OF 1964;
22          Plaintiff-Intervenor,
                                                  (2) 42 U.S.C. § 1981;
23     v.
                                                  (3) CALIFORNIA FAIR EMPLOYMENT
24 FIDELITY HOME ENERGY, INC., a                      AND HOUSING ACT;
   California Corporation; and DOES 1-50,
25                                                (4) STATE TORT LAW;
          Defendants.
26                                                (5) CALIFORNIA LABOR CODE

27                                           JURY TRIAL DEMANDED
28

{00575814.DOCX 2}                                        Case No. 19-cv-01231-JSW

**INTRODUCTION**

1.     This is an action for relief from violations by Defendant Fidelity Home Energy, Inc. ("Defendant Fidelity" or "Fidelity"), and Does 1-50 (collectively, "Defendants"), of the right of Plaintiff-Intervenor Ayesha Faiz ("Plaintiff-Intervenor") to be free from unlawful employment discrimination on the basis of her national origin and race, Middle Eastern.

2.     Defendants, as Plaintiff-Intervenor's former employers, subjected Plaintiff-Intervenor to the egregious and unlawful employment practice of forcing her, as a condition of her employment, to participate in and enforce a company policy and/or practice of refusing services to potential customers who were perceived to be of Middle Eastern or Indian national origin or race ("Policy").

3.     Defendants' discriminatory Policy against those customers permeated all of Plaintiff-Intervenor's work.  On a regular basis, she was required to refuse services to potential customers of her own national origin and race, Middle Eastern, or instruct others to do so pursuant to Defendants' Policy.  As a person of Middle Eastern descent, this caused Plaintiff-Intervenor significant distress, anxiety, and shame.

4.     Plaintiff-Intervenor witnessed Fidelity employees of all ranks, including the CEO and President, openly engage in and/or openly allow this Policy to thrive.  The Policy continued even after Plaintiff-Intervenor and at least one other employee expressed their opposition to it.

5.     The consequent hostile work environment, discriminatory demotion, and retaliation at the hands of Defendants forced Plaintiff-Intervenor to resign from her position.

**JURISDICTION AND VENUE**

6.     This Court has jurisdiction over the subject matter and parties pursuant to 28 U.S.C. § 1331, as this case involves questions of federal law.  This Court also has jurisdiction pursuant to 28 U.S.C. § 1343 because Plaintiff-Intervenor seeks damages for violation of her civil rights.

7.     This Court has supplemental jurisdiction over the related state law claims pursuant to 28 U.S.C. § 1367(a) because those claims form part of the same case or controversy under Article III of the United States Constitution.  Plaintiff-Intervenor's state law claims share all

common operative facts with her federal law claims, and the parties are identical.  Resolving Plaintiff-Intervenor's federal and state claims in a single action serves the interests of judicial economy, convenience, consistency, and fairness to the parties.

8.      Venue is proper in, and Defendants are subject to the personal jurisdiction of, this Court because Defendants maintain facilities and business operations in this District, and all or most of the events giving rise to this action occurred in this District. 28 U.S.C. § 1391(b); 42 U.S.C. § 2000e-5(f)(3).

9.      Pursuant to Local Rule 3-2(d) of this District, assignment to the Oakland Division of this Court is proper because all or most of the events giving rise to Plaintiff-Intervenor's claims occurred in Alameda County.

## NATURE OF THIS ACTION

10.      This is an action brought pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., *as amended*, ("Title VII"), 42 U.S.C. § 1981, and California statutory and common law.

11.      Plaintiff-Intervenor seeks injunctive and declaratory relief, compensatory damages, punitive damages, liquidated damages, unpaid wages and penalties, and her reasonable attorneys' fees and litigation expenses as remedies for Defendants' violations of her Federal and California statutory as well as common law rights.

12.      Through this Complaint, Plaintiff-Intervenor intervenes as of right in the action commenced in this Court on March 7, 2019 against Defendant by the U.S. Equal Employment Opportunity Commission ("EEOC"), styled *U.S. Equal Employment Opportunity Commission v. Fidelity Home Energy, Inc*., Case No. 4:19-cv-01231.  42 U.S.C. § 2000e-5(f)(1).

## PARTIES

13.      Plaintiff-Intervenor Ayesha Faiz is a woman of Afghan descent.  She worked as a Representative Services Supervisor for Defendant Fidelity from approximately November 12, 2015 until on or around December 3, 2015.  Thereafter, Plaintiff-Intervenor worked for Defendant Fidelity as a "Confirmer" until her resignation on December 7, 2015.

14.      Upon information and belief, Defendant Fidelity is a California corporation with

its principal place of business in San Leandro, California.

15.     Plaintiff-Intervenor is informed and believes, and thereon alleges, that Defendant Fidelity at all times relevant herein was engaged in the business of selling energy efficiency products, such as solar panels, and installing these products in homes.

16.     At all times relevant herein, Defendant Fidelity had at least fifteen employees.  It is therefore an "employer" within the meaning of Title VII.

17.     Defendant Fidelity is also an "employer" within the meaning of the California Fair Employment and Housing Act ("FEHA").

18.     Plaintiff-Intervenor is informed and believes, and thereon alleges, that at all times relevant herein each of the Defendant Does 1-50 were responsible in some manner for the occurrences and injuries alleged in this complaint.  Their names and capacities are currently unknown to Plaintiff-Intervenor.  Plaintiff-Intervenor will amend this Complaint to show such true names and capacities when the same have been ascertained.

## STATEMENT OF FACTS

19.     At all times material to this action, Plaintiff-Intervenor was employed by Defendant Fidelity at its San Leandro, California office.

20.     Defendant Fidelity hired Plaintiff-Intervenor as a Representative Services Supervisor on or around November 12, 2015.

21.     As a Representative Services Supervisor, Plaintiff-Intervenor worked in Fidelity's Representative Services Department, also known as the "Confirmer Room."  Plaintiff-Intervenor's job responsibilities included overseeing the work of Fidelity employees who worked in the "Hot Data" room and took inbound calls from potential customers, and the work of "Confirmers," whose job was to confirm appointments for Fidelity employees to visit potential customers' homes to sell and/or install Fidelity's products.  Plaintiff-Intervenor, along with the other supervisors in her department, also confirmed appointments.

22.     Calls with potential customers would be made by Telemarketer Services Representatives (outgoing calls) or received by employees in the "Hot Data Room" (incoming calls).  These employees would then create customer appointments, or "leads," based on those

calls.  Plaintiff-Intervenor and her supervisor peers in the Confirmer Room would, in turn, follow up on these leads and confirm appointments with eligible customers.

23.     Plaintiff-Intervenor's supervisorial duties also included occasionally filling in for a supervisor, Daryl Smith, to oversee Telemarketer Services Representatives as they called potential customers.

24.     Leata Tufono, another Representative Services Supervisor, trained Plaintiff-Intervenor during her first week of employment.  During this training period, Ms. Tufono informed Plaintiff-Intervenor that Fidelity had a policy and/or practice of not providing services to potential customers of perceived Middle Eastern or Indian descent (the "Policy").  Ms. Tufono instructed Plaintiff-Intervenor to avoid confirming appointments with these customers by telling them there were no available appointments or that Fidelity would mail them an informational packet.  Neither explanation was true.

25.     During this training, Ms. Tufono also demonstrated one way she carried out Fidelity's Policy.  As Ms. Tufono and Plaintiff-Intervenor sat side by side reviewing Fidelity's database of customer appointments to be confirmed, Ms. Tufono pointed out a name she believed indicated that the customer was of Middle Eastern descent.  Ms. Tufono proceeded to type that name into a Google search browser and search for images.  Based on the images of individuals she saw in the search results, Ms. Tufono concluded that the name was a "Middle Eastern" name and that, therefore, she would not "run it" (i.e., confirm the appointment).

26.     During her training period, Plaintiff-Intervenor asked Ms. Tufono why Fidelity had the Policy.  Ms. Tufono casually answered that she did not know.

27.     Ms. Tufono also informed Plaintiff-Intervenor during her training that Defendant Fidelity's CEO, Bradley Smith ("CEO Smith"), had a short temper and did not like to be disturbed by employees.

28.     Throughout her employment, Plaintiff-Intervenor observed employees abide by Fidelity's Policy while speaking with potential customers.  For example, on a regular basis, Plaintiff-Intervenor overheard employees telling potential customers who were believed to be of Middle Eastern or Indian descent that Fidelity had no available appointments and/or that Fidelity

would send the customer information via mail, neither of which was true.  On several occasions, Plaintiff-Intervenor observed Fidelity employees cancel already-confirmed appointments with customers of perceived Middle Eastern or Indian descent based on a non-existent scheduling conflict.

29.    Plaintiff-Intervenor also saw database and handwritten notes that further demonstrated open and widespread compliance with the Policy.  For example, on a regular basis, Plaintiff-Intervenor saw a post-it note on an employee's computer in the Hot Data room that read "NO INDIANS", or words to that effect, in all capital letters.

30.    On an ongoing basis, Plaintiff-Intervenor observed notes left by Fidelity employees in database entries for customers believed to be of Middle Eastern or Indian descent that read "Not Qualified", "We Won't Run This", "Indian Name! NQ", and the like.

31.    While conducting follow-up calls with customer leads, Plaintiff-Intervenor came across a field in a Fidelity database that allowed Fidelity employees to "flag" a database entry based on "ethnicity."  A "flag" in a database entry signaled that employees were not to follow up or otherwise provide services to the customer.  Plaintiff-Intervenor clicked on this "ethnicity" field and discovered a large number of database entries that had been flagged.  All of the entries Plaintiff-Intervenor reviewed corresponded to customers with names that could have been perceived to be Middle Eastern or Indian.

32.    As part of her duties as a Representative Services Supervisor, Plaintiff-Intervenor was required to enforce Fidelity's Policy.  For example, on multiple occasions, Plaintiff-Intervenor had to instruct other Fidelity employees to not schedule appointments for customers of perceived Middle Eastern or Indian descent or to cancel an already scheduled appointment for these customers.  Per the Policy, Plaintiff-Intervenor was required to tell employees in the latter scenario that they should falsely tell the customer that there were no available appointments and/or that Defendant Fidelity would send information via mail.

33.    On at least two occasions, pursuant to the Policy, Plaintiff-Intervenor herself had to cancel customers' appointments because of their perceived Indian or Middle Eastern descent.  On one occasion, a customer called into the Representative Services Department to confirm his

appointment for that same day.  When Plaintiff-Intervenor consulted Ms. Tufono about this customer's appointment, Ms. Tufono reiterated that Fidelity did not "do appointments" with Middle Eastern and Indian customers.  Based on this, Plaintiff-Intervenor was forced to cancel the customer's appointment.  On another occasion, Ms. Tufono asked Plaintiff-Intervenor to call a customer to cancel his appointment because Fidelity believed the individual to be of Middle Eastern descent.  On both occasions, Plaintiff-Intervenor was forced to falsely tell the customers that Fidelity either had no available appointments or that there had been a scheduling conflict, and that Fidelity would send additional information through the mail.

34.     Throughout her employment at Fidelity, Plaintiff-Intervenor witnessed the Policy being applied to potential customers who had similar or the same names as Plaintiff-Intervenor's Middle Eastern family and Middle Eastern community members.

35.     Plaintiff-Intervenor expressed her opposition to the Policy to various Fidelity supervisors throughout her employment, including to her direct supervisor, Darlene Mills, who was Fidelity's Call Center Supervisor.  Despite Plaintiff-Intervenor's repeated expressions of disapproval and opposition to Defendant's Policy, no action was taken to remedy the matter or explain the Policy.  To the contrary, Plaintiff-Intervenor was advised by these individuals that it was a long-standing company policy and/or practice.

36.     Plaintiff-Intervenor also expressed her concerns about the Policy to Telemarketer Services Representatives.  Some of these employees complained to Plaintiff-Intervenor that the Policy undermined their ability to meet their customer lead quotas.

37.     Plaintiff-Intervenor is informed and believes that in or around the latter half of November 2015, Fidelity fired Bruchell Fox, a Telemarketer Services Representative, for failing to meet her quotas.  Upon Ms. Fox's firing, she complained to CEO Smith and others about the Policy, stating that it was discriminatory and that it caused her to fail to meet her quotas since it prohibited her from creating leads for interested customers of perceived Middle Eastern or Indian descent.

38.     Sometime during the second week of Plaintiff-Intervenor's employment, Daryl Smith approached Plaintiff-Intervenor while she sat in the Representative Services Department

alongside Ms. Tufono and Mr. Keyes.  Mr. Smith asked Plaintiff-Intervenor to assist him in confirming an appointment for a Spanish-speaking customer.  Plaintiff-Intervenor responded that she did not speak Spanish.

39.     Plaintiff-Intervenor then informed Ms. Tufono and Mr. Keyes that she was of Middle Eastern descent.  Both employees responded they had thought she was "Mexican."

40.     Thereafter, Plaintiff-Intervenor began to openly share her ethnicity with other Fidelity supervisors and staff.

41.     Plaintiff-Intervenor is informed and believes that in or around November 28, 2015, CEO Smith informed Fidelity staff that they could now schedule appointments with customers of Middle Eastern and Indian descent.

42.     Despite CEO Smith's announcement, however, the Policy remained in effect. Plaintiff-Intervenor continued to observe other Fidelity supervisors and employees openly implement the Policy.  She also continued to observe employee database and handwritten notes indicating Fidelity employees still abided by the Policy.

43.     Plaintiff-Intervenor complained to other Fidelity supervisors about the continued existence of the Policy.  As before, these complaints were ignored.

44.     On or around December 3, 2015, CEO Smith publicly demoted Plaintiff-Intervenor during a meeting with other supervisors.  CEO Smith informed Plaintiff-Intervenor that she was no longer a Representative Services Supervisor and, instead, held the position of "Confirmer." He also stated to Plaintiff-Intervenor that Fidelity's Hiring Manager, Scott Johnson-Temores, had told Plaintiff-Intervenor that she had been hired as a supervisor by mistake.

45.     This public demotion humiliated and confused Plaintiff-Intervenor.

46.     Plaintiff-Intervenor never received the bonus she was owed pursuant to the "Hot Data/Rep Services Supervisor Pay Plan."

47.     On or around December 5, 2015, Plaintiff-Intervenor was in the Hot Data room while CEO Smith conducted a role-playing exercise with a Hot Data employee while she sat at her computer.  The post-it note that read "NO INDIANS" was prominently displayed on that employee's computer during this exercise.  Despite this post-it note being in plain view of Mr.

Smith, Plaintiff-Intervenor, and the other employees who were present, Mr. Smith did not take it down or mention anything about it.

48.     On or around that same day, Plaintiff-Intervenor again complained about the Policy to Hot Data Supervisor Thomas Keyes.  Mr. Keyes made no indication that he would take any action to try to end the Policy.

49.     As someone of Middle Eastern descent herself, Plaintiff-Intervenor was deeply offended by Defendant's Policy.  Its existence, the office's open acceptance of it, and Plaintiff-Intervenor's forced participation in it as a condition of her employment caused her significant distress and anxiety. Plaintiff-Intervenor felt ashamed and degraded that she had to enforce and participate in a policy and/or practice that overtly discriminated against customers of her own national origin and race.

50.     On or around December 7, 2015, Plaintiff-Intervenor resigned from her position by sending a text message to Ms. Tufono.  In this message, Plaintiff-Intervenor again expressed her opposition to the Policy and stated that she felt forced to resign because of it.  Plaintiff-Intervenor stated that she had "been really uncomfortable working there since knowing the company refuses to service middle easterners [sic] or Indians . . . Just imagine being black for example and going to work somewhere but they say, 'no blacks.' It makes me sick to know we refuse to service a particular ethnicity of people.  We literally go out of our way to single them out."

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

51.     Plaintiff-Intervenor timely filed charges with the United States Equal Employment Opportunity Commission, which were cross-filed with the California Department of Fair Employment and Housing ("DFEH").

52.     During the pendency of the EEOC's processing and investigation of Plaintiff-Intervenor's charge of discrimination, and prior to the EEOC's issuance of a Notice of Right to Sue, Plaintiff-Intervenor necessarily initiated an action in the Superior Court of California, County of Alameda, in order to preserve her California statutory and common law claims.  That action is styled *Ayesha Faiz v. Fidelity Home Energy, Inc., et al.,* No. RG17884669 (filed Dec. 4, 2017).  Upon the Court's exercise of supplemental jurisdiction over the state law claims contained

herein, Plaintiff-Intervenor will ask the Superior Court to stay the state action until these state law claims are adjudicated by this Court, at which time she will move to dismiss her state court complaint with prejudice.

53.     Plaintiff-Intervenor has timely filed this action and has complied with all administrative prerequisites to bring this lawsuit.

54.     On September 14, 2016, the EEOC issued Ms. Faiz a "Notice to Complainant and Respondent", indicating that it served as her DFEH Right to Sue Notice, and that the statute of limitations for her FEHA claims would be tolled during the pendency of the EEOC's investigation. A true and correct copy of the Notice to Complainant and Respondent is attached hereto as Exhibit A.

55.     The EEOC issued Ms. Faiz a Notice of Right to Sue on March 7, 2019, in relation to her Title VII claims. A true and correct copy of the Notice of Right to Sue is attached hereto as Exhibit B.

### FIRST CLAIM FOR RELIEF
**[Hostile Work Environment Based on National Origin in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]**

56.     Plaintiff-Intervenor incorporates by reference the allegations contained in Paragraphs 1 through 55, above, as if fully set forth herein.

57.     Title VII of the Civil Rights Act of 1964, as amended, makes it unlawful for an employer "(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or (2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a).

58.     Defendants subjected Plaintiff-Intervenor to unwelcome conduct by forcing her, as a term and condition of her employment, to participate in and enforce their Policy of refusing

services to potential customers based on their actual or perceived Middle Eastern or Indian national origin.

59. This conduct was severe and pervasive. On a regular, and sometimes daily, basis, Plaintiff-Intervenor witnessed her coworkers openly abide by the Policy; observed coworkers' database and hand-written notes indicating that Fidelity would not provide services to Middle Eastern and Indian individuals; and herself had to participate in and enforce the Policy.

60. Plaintiff-Intervenor's multiple complaints to Defendants' supervisory employees did not cause Defendants to rescind the Policy.

61. The Policy and Defendants' actions in relation thereto created a hostile work environment for Plaintiff-Intervenor because of her national origin, Middle Eastern.

62. Plaintiff-Intervenor found her work environment to be hostile and heavily charged with national origin discrimination.

63. A reasonable person of Middle Eastern national origin in Plaintiff-Intervenor's position would have found the work environment to be hostile and polluted by national origin discrimination.

64. Management level employees knew, or should have known, of the Policy and Fidelity employees' conduct in relation thereto.

65. Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with national origin discrimination, and did not exercise reasonable care to rescind the Policy, even after Plaintiff-Intervenor's repeated opposition to it.

66. As a direct, legal and proximate result of this discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

67. Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on national origin.

68. Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

//

## SECOND CLAIM FOR RELIEF
**[National Origin Discrimination (Disparate Treatment) in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]**

69.     Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 68, above.

70.     Defendants discriminated against Plaintiff-Intervenor by demoting her on the basis of her national origin, Middle Eastern.

71.     Plaintiff-Intervenor's national origin was the determining factor and/or a motivating factor in Defendants' adverse employment action.

72.     As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

73.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on national origin.

74.     Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## THIRD CLAIM FOR RELIEF
**[Retaliation in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-3(a)]**

75.     Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 74, above.

76.     Section 704(a) of Title VII of the Civil Rights Act of 1964, as amended, prohibits employers from discriminating against an employee "because [she] has opposed any practice made an unlawful employment practice by this subchapter." 42 U.S.C. § 2000e-3(a).

77.     Plaintiff-Intervenor engaged in protected activity by making numerous complaints to Defendants' agents and employees about Defendants' employment practice that required Plaintiff-Intervenor, as a term and condition of her employment, to enforce and engage in the Policy of refusing services to customers based on their perceived national origin, Middle Eastern

or Indian.

78.     Plaintiff-Intervenor reasonably believed that this term and condition of her employment was unlawful.

79.     As a result of Plaintiff-Intervenor's complaints, Defendants, their agents and/or employees took materially adverse actions against Plaintiff-Intervenor, including, but not limited to, demoting her in front of her supervisor peers and constructively discharging her from her employment.

80.     Defendants', their agents' and/or employees' retaliatory actions would deter a reasonable employee from engaging in protected activity under Title VII.

81.     As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

82.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from retaliation.

83.     Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

### FOURTH CLAIM FOR RELIEF
**[Constructive Discharge in Violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2(a)]**

84.     Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 83, above.

85.     Defendants, and their agents and employees, created discriminatory and intolerable working conditions for Plaintiff-Intervenor.

86.     A reasonable person in Plaintiff-Intervenor's position would have felt compelled to resign under these conditions.

87.     Plaintiff-Intervenor did in fact resign from her position because of these conditions.

88.     As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at

trial.

89.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on national origin.

90.     Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

**FIFTH CLAIM FOR RELIEF**
**[Hostile Work Environment Based on Race in Violation of 42 U.S.C. § 1981]**

91.     Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 90, above.

92.     42 U.S.C. § 1981(a) provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

93.     "'Make and enforce contracts' includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

94.     Plaintiff-Intervenor is a "person within the jurisdiction of the United States."

95.     Defendants subjected Plaintiff-Intervenor to unwelcome conduct by forcing her, as a term and condition of her employment, to participate in and enforce their Policy of refusing services to potential customers based on their actual or perceived Middle Eastern or Indian race.

96.     This conduct was severe and pervasive. On a regular, and sometimes daily, basis, Plaintiff-Intervenor witnessed her coworkers openly abide by the Policy; observed coworkers' database and hand-written notes indicating that Fidelity would not provide services to Middle Eastern and Indian individuals; and herself had to participate in and enforce the Policy.

97.     Plaintiff-Intervenor's multiple complaints to Defendants' supervisory employees did not cause Defendants to rescind the Policy.

98.     The Policy and Defendants' actions in relation thereto created a hostile work

environment for Plaintiff-Intervenor because of her race, Middle Eastern.

99.     Plaintiff-Intervenor found her work environment to be hostile and heavily charged with race discrimination.

100.     A reasonable person of Middle Eastern race in Plaintiff-Intervenor's position would have found the work environment to be hostile and polluted by race discrimination.

101.     Management level employees knew, or should have known, of the Policy and Fidelity employees' conduct in relation thereto.

102.     Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with race discrimination, and did not exercise reasonable care to rescind the Policy, even after Plaintiff-Intervenor's repeated opposition to it.

103.     As a direct, legal and proximate result of this discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

104.     Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on race.

105.     Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## SIXTH CLAIM FOR RELIEF
### [Race Discrimination (Disparate Treatment) in Violation of 42 U.S.C. § 1981]

106.     Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 105, above.

107.     Defendants discriminated against Plaintiff-Intervenor by demoting her on the basis of her race, Middle Eastern.

108.     Plaintiff-Intervenor's race was the determining factor and/or a motivating factor in Defendants' adverse employment action.

109.     As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

//

110.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on race.

111.   Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## SEVENTH CLAIM FOR RELIEF
### [Retaliation in Violation of 42 U.S.C. § 1981]

112.   Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 111, above.

113.   Plaintiff-Intervenor made numerous complaints to Defendants' agents and employees about the employment practice that required Plaintiff-Intervenor, as a term and condition of her employment, to enforce and engage in the Policy of refusing services to customers based on their race, Middle Eastern or Indian.

114.   Plaintiff-Intervenor reasonably believed this term and condition of her employment to be unlawful.

115.   As a result of Plaintiff-Intervenor's complaints, Defendants' agents and employees took materially adverse actions against Plaintiff-Intervenor, including, but not limited to, demoting her in front of her supervisor peers and constructively discharging her from her employment.

116.   Defendants' retaliatory actions would deter a reasonable employee from engaging in protected activity under § 1981.

117.   As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

118.   Defendants' unlawful actions were intentional, willful, malicious, and/or Done with reckless disregard to Plaintiff-Intervenor's right to be free from retaliation.

119.   Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## EIGHTH CLAIM FOR RELIEF
### [Constructive Discharge in Violation of 42 U.S.C. § 1981]

120.   Plaintiff-Intervenor incorporates by reference as if fully set forth herein the

allegations contained in paragraphs 1 through 119, above.

121.    Defendants, and their agents and employees, created discriminatory and intolerable working conditions.

122.    A reasonable person in Plaintiff-Intervenor's position would have felt compelled to resign under these conditions.

123.    Plaintiff-Intervenor did in fact resign from her position because of these conditions.

124.    As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

125.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on race.

126.    Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

### NINTH CLAIM FOR RELIEF
**[Hostile Work Environment Based on National Origin in Violation of the FEHA, Cal. Gov't Code § 12940]**

127.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 126, above.

128.    The FEHA makes it unlawful "[f]or an employer, because of the . . . national origin . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940(a).

129.    The FEHA also makes it unlawful for an employer, "because of . . . national origin, . . . to harass an employee[.]" Cal. Gov't Code § 12940(j).

130.    Defendants subjected Plaintiff-Intervenor to unwelcome conduct by forcing her, as a term and condition of her employment, to participate in and enforce their Policy of refusing services to potential customers based on their actual or perceived Middle Eastern or Indian

national origin.

131.   This conduct was severe and pervasive. On a regular, and sometimes daily, basis, Plaintiff-Intervenor witnessed her coworkers openly abide by the Policy, observed coworkers' database and hand-written notes indicating that Fidelity would not provide services to Middle Eastern and Indian individuals, or herself had to participate in and enforce the Policy.

132.   Plaintiff-Intervenor's multiple complaints to Defendants' supervisory employees did not cause Defendants to rescind the Policy.

133.   The Policy and Defendants' actions in relation thereto created a hostile work environment for Plaintiff-Intervenor because of her national origin, Middle Eastern.

134.   Plaintiff-Intervenor found her work environment to be hostile and heavily charged with national origin discrimination.

135.   A reasonable person of Middle Eastern national origin in Plaintiff-Intervenor's position would have found the work environment to be hostile and polluted by national origin discrimination.

136.   Management level employees knew, or should have known, of the Policy and Fidelity employees' conduct in relation thereto.

137.   Defendants did not exercise reasonable care to prevent the creation of a hostile work environment charged with national origin discrimination, and did not exercise reasonable care to rescind the Policy, even after Plaintiff-Intervenor's repeated opposition to it.

138.   As a direct, legal and proximate result of this discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

139.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on national origin.

140.   Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

//

//

**TENTH CLAIM FOR RELIEF**
**National Origin Discrimination (Disparate Treatment) in Violation of the FEHA,**
**Cal. Gov't Code § 12940(a)**

141.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 140, above.

142.    The FEHA makes it unlawful "[f]or an employer, because of the . . . national origin . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment."  Cal. Gov't Code § 12940(a).

143.    Defendants discriminated against Plaintiff-Intervenor by demoting her on the basis of her national origin, Middle Eastern.

144.    Plaintiff-Intervenor's national origin was the determining factor and/or a motivating factor in Defendants' adverse employment action.

145.    As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

146.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on national origin.

147.    Plaintiff-Intervenor is entitled to reasonable attorneys' fees and costs of suit.

**ELEVENTH CLAIM FOR RELIEF**
**[Retaliation in Violation of the FEHA, Cal. Gov't Code § 12940(h)]**

148.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 147, above.

149.    It is unlawful under the FEHA "[f]or any employer . . . or person to discharge, expel, or otherwise discriminate against any person because the person has opposed

any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Cal. Gov't Code § 12940(h).

150.    Plaintiff-Intervenor engaged in protected activity by making numerous complaints to Defendants' agents and employees about the employment practice that required Plaintiff-Intervenor, as a term and condition of her employment, to enforce and engage in the Policy of refusing services to customers based on their perceived national origin, Middle Eastern or Indian.

151.    Plaintiff-Intervenor reasonably believed this term and condition of her employment to be unlawful.

152.    As a result of Plaintiff-Intervenor's complaints, Defendants, their agents, and/or employees took materially adverse actions against Plaintiff-Intervenor, including, but not limited to, demoting her in front of her supervisor peers and constructively discharging her from her employment.

153.    As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

154.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from retaliation.

155.    Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## TWELFTH CLAIM FOR RELIEF
### [Failure to Prevent Discrimination and Harassment in Violation of the FEHA, Cal. Gov't Code § 12940(k)]

156.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 155, above.

157.    Under the FEHA, it is unlawful "[f]or an employer . . . to fail to take all reasonable steps necessary to prevent discrimination and harassment from occurring." Cal. Gov't Code § 12940(k).

158.    Defendants, their agents, and/or employees failed to take all reasonable steps necessary to prevent discrimination and a hostile work environment based on national origin,

including, but not limited to, failure to investigate Plaintiff-Intervenor's complaints regarding the Policy, failure to rescind the Policy, and failure to remedy Plaintiff-Intervenor's unlawful demotion.

159.  Instead, Defendants created the Policy and participated in maintaining a discriminatory and hostile work environment. Defendants failed to effectively investigate, stop, correct, or prevent the unlawful Policy and related conditions, even after Plaintiff-Intervenor and at least one other Fidelity employee complained of such matters.

160.  As a direct, legal and proximate result of Defendants' failure to take all reasonable steps necessary to prevent discrimination and harassment from occurring, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

161.  Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on national origin.

162.  Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## THIRTEENTH CLAIM FOR RELIEF
### [Constructive Discharge in Violation of the FEHA, Cal. Gov't Code § 12940(a)]

163.  Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 162, above.

164.  An employee's resignation becomes a constructive discharge under the FEHA when the employer either intentionally created or knowingly permitted working conditions that were so intolerable or aggravated at the time of the employee's resignation that a reasonable person in the employee's position would be compelled to resign.

165.  Defendants, and their agents and supervisory employees, intentionally created and/or knowingly permitted intolerable working conditions.

166.  A reasonable person in Plaintiff-Intervenor's position would have felt compelled to resign under these conditions.

167.  Plaintiff-Intervenor did in fact resign from her position because of these

conditions.

168.    As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

169.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on national origin.

170.    Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## FOURTEENTH CLAIM FOR RELIEF
### [Wrongful Constructive Discharge in Violation of California Public Policy]

171.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 170, above.

172.    The California Unruh Civil Rights Act provides that "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their . . . national origin . . . are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever." Cal. Civ. Code § 51.

173.    The FEHA makes it unlawful "[f]or an employer, because of the . . . national origin . . . of any person, to refuse to hire or employ the person or to refuse to select the person for a training program leading to employment, or to bar or to discharge the person from employment or from a training program leading to employment, or to discriminate against the person in compensation or in terms, conditions, or privileges of employment." Cal. Gov't Code § 12940 (a).

174.    It is a violation of the California public policy embodied in Cal. Civ. Code § 51 for an employer to force an employee to violate that provision by requiring that employee to participate in and enforce a policy and/or practice of refusing to provide services to customers based on their actual or perceived national origin.

175.    It is a violation of the California public policy embodied in Cal. Gov't Code § 12940(a) for an employer to subject an employee to the unlawful employment practice of being

forced to participate in and enforce, as a term and condition of employment, a policy and/or practice that discriminates against individuals on the basis of their actual or perceived national origin.

176.   Defendants, and their agents and supervisory employees, intentionally created and/or knowingly permitted intolerable working conditions.

177.   Defendants, and their agents and employees, required Plaintiff-Intervenor to participate in and enforce the Policy by directly or indirectly refusing services to potential Fidelity customers on the basis of their actual or perceived national origin, Middle Eastern or Indian, in violation of California fundamental public policy, Cal. Civ. Code § 51.

178.   Defendants, and their agents and employees, subjected Plaintiff-Intervenor to intolerable employment conditions that violated fundamental public policy under Cal. Gov't Code § 12940(a).  Namely, Defendants forced Plaintiff-Intervenor to participate in and enforce, as a term and condition of her employment, the Policy.  This Policy discriminated against customers on the basis of their national origin, Middle Eastern or Indian.  As a person of Middle Eastern descent, Plaintiff-Intervenor shared the national origin of many of these customers.

179.   A reasonable person in Plaintiff-Intervenor's position would have felt compelled to resign under these conditions.

180.   Plaintiff-Intervenor did in fact resign from her position because of these conditions.

181.   As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

182.   Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from discrimination based on national origin.

183.   Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

//

//

## FIFTEENTH CLAIM FOR RELIEF
### [Wrongful Demotion in Violation of California Public Policy]

184.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 183, above.

185.    It is a violation of the California public policy embodied in Cal. Civ. Code § 51 and Cal. Gov't Code § 12940 for an employer to take an adverse employment action, including demotion, against an employee based on that employee's national origin or because that employee has complained of and opposed being required to participate in and enforce a policy and/or practice of refusing to provide services to customers based on their actual or perceived national origin.

186.    Defendant demoted Plaintiff-Intervenor on the basis of her national origin, Middle Eastern.

187.    Plaintiff-Intervenor's national origin was the determining factor and/or a motivating factor in Defendant's adverse employment action.

188.    Plaintiff-Intervenor made numerous complaints to Defendants' agents and employees about the employment practice that required Plaintiff-Intervenor, as a term and condition of her employment, to enforce and engage in the Policy of refusing services to customers based on their perceived national origin, Middle Eastern or Indian.

189.    As a result of Plaintiff-Intervenor's complaints, Defendants, their agents, and/or employees took materially adverse actions against Plaintiff-Intervenor, including, but not limited to, demoting her in front of her supervisor peers.

190.    As a direct, legal and proximate result of the discrimination, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

191.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from retaliation.

192.    Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

//

## SIXTEENTH CLAIM FOR RELIEF
### [Immediate Payment of Wages and Waiting Time Penalties Pursuant to California Labor Code §§ 201-203]

193.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 192, above.

194.    California Labor Code §§ 201 and 202 mandate that an employer pay its employees all earned wages immediately upon discharge or within seventy-two (72) hours of the employee's resignation.

195.    California Labor Code § 203 authorizes an employee to recover waiting time penalties in an amount equal to the employee's daily wages for up to thirty (30) days if an employer willfully fails to pay any wages earned and due to the employee within the timeframes required by California Labor Code §§ 201 and 202.

196.    Plaintiff-Intervenor was entitled to wages in the form of a bonus pursuant to Defendants' bonus policy.

197.    Plaintiff-Intervenor was constructively discharged from her employment at Fidelity on or around December 7, 2015.

198.    Defendants willfully failed to pay Plaintiff-Intervenor for the bonus owed her upon or within 72 hours of her constructive discharge.

199.    Plaintiff-Intervenor is entitled to recover from Defendants waiting time penalties pursuant to California Labor Code § 203, plus interest, in an amount to be proven at trial.

200.    Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## SEVENTEENTH CLAIM FOR RELIEF
### [Retaliation in Violation of Labor Code § 1102.5]

201.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 200, above.

202.    California Labor Code § 1102.5 prohibits employers, *inter alia*, from retaliating against an employee because the employer believes that the employee may disclose information to a government agency with authority to investigate where the employee has a reasonable belief

that the information discloses a violation of a state or federal statute.  Cal. Lab. Code § 1102.5(b).

203.    Plaintiff-Intervenor is informed and believes and thereon alleges that because of Plaintiff-Intervenor's internal complaints about the Policy, Defendants retaliatorily demoted and/or constructively discharged Plaintiff-Intervenor in the belief that she would disclose information concerning the Policy to a government agency with authority to investigate.

204.    As a direct, legal and proximate result of the retaliation, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

205.    Defendants' unlawful actions were intentional, willful, malicious, and/or done with reckless disregard to Plaintiff-Intervenor's right to be free from retaliation.

206.    Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

## EIGHTEENTH CLAIM FOR RELIEF
### [Negligent Supervision]

207.    Plaintiff-Intervenor incorporates by reference as if fully set forth herein the allegations contained in paragraphs 1 through 206, above.

208.    Defendants had authority to supervise their employees.

209.    Plaintiff-Intervenor is informed and believes and thereon alleges that Defendants knew or reasonably should have known that their failure adequately to supervise their employees created the risk of the commission, by those employees, of the wrongful conduct alleged herein, but that Defendants failed to take appropriate corrective action.

210.    Plaintiff-Intervenor is informed and believes and thereon alleges that Defendants' failure to take appropriate corrective action resulted in the commission of the wrongful conduct alleged herein, and caused Plaintiff-Intervenor to suffer injury, damage, loss or harm.

211.    As a direct, legal and proximate result of Defendants' negligence, Plaintiff-Intervenor has sustained economic and emotional injuries, resulting in damages in an amount to be proven at trial.

212.    Plaintiff-Intervenor is entitled to her reasonable attorneys' fees and costs of suit.

//

**DECLARATORY RELIEF ALLEGATIONS**

213.    A present and actual controversy exists between Plaintiff-Intervenor and Defendants concerning their rights and respective duties. Plaintiff-Intervenor contends that Defendants violated her rights under Title VII, 42 U.S.C. § 1981, the FEHA, the California Labor Code and California common law. Plaintiff-Intervenor is informed and believes and thereon alleges that the Defendants deny these allegations. Declaratory relief is therefore necessary and appropriate.

214.    Plaintiff-Intervenor seeks a judicial declaration of the respective rights and duties of the parties.

**INJUNCTIVE RELIEF ALLEGATIONS**

215.    No plain, adequate, or complete remedy at law is available to Plaintiff-Intervenor to redress the wrongs alleged herein.

216.    If this Court does not grant the injunctive relief sought herein, Plaintiff-Intervenor will be irreparably harmed.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff-Intervenor prays for relief as follows:

1.    For a declaration that Defendants' actions, policies, and practices as alleged herein are unlawful;

2.    For reinstatement;

3.    For lost wages, penalties and all other compensation denied or lost to Plaintiff-Intervenor by reason of Defendants' unlawful actions, in an amount to be proven at trial;

4.    For compensatory damages for Plaintiff-Intervenor's emotional pain and suffering, in an amount to be proven at trial;

5.    For punitive damages in an amount to be determined at trial;

6.    For liquidated damages;

7.    For interest on lost wages, compensation, and damages, including pre- and post-judgment interest and an upward adjustment for inflation;

//

8.    For an order enjoining Defendants from engaging in the unlawful acts complained of herein;

9.    For her reasonable attorneys' fees and costs of suit pursuant to 42 U.S.C. § 2000e-5(k), 42 U.S.C. § 1988, Cal. Gov't Code § 12965(b), Cal. Code Civ. Pro. § 1021.5, and other laws; and

10.    For such other and further relief as this Court deems just and proper.

Dated: June 21, 2019                         Respectfully submitted,

                                             Marisa Díaz
                                             Christopher Ho
                                             LEGAL AID AT WORK

                                             Beth W. Mora
                                             MORA EMPLOYMENT LAW, APC

                                    By:   /s/ Marisa Díaz
                                             MARISA DIAZ

                                             Attorneys for Plaintiff-Intervenor Ayesha Faiz

1

## **JURY DEMAND**

2          Plaintiff-Intervenor hereby demands a jury trial in the within-entitled action.

3

4     Dated:  June 21, 2019                    Respectfully submitted,

5

6                                              Marisa Díaz
                                              Christopher Ho
7                                              LEGAL AID AT WORK

8                                              Beth W. Mora
                                              MORA EMPLOYMENT LAW, APC
9

10

                                    By:   /s/ Marisa Díaz
11                                            MARISA DIAZ
                                              Attorneys for Plaintiff-Intervenor Ayesha Faiz
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28